UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. CV-10718-DPW

|  |  |
|---|---|
| PAUL B. MARINUCCI, MICHAEL P. MARINNUCI, and JOSEPH P. MARINUCCI<br>　　　　Plaintiffs<br><br>V.<br><br>FIDELITY INVESTMENT and FMR CORPORATION<br><br>　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF FMR CORP. IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND TO STAY OR DISMISS**

### I.　　　　INTRODUCTION

Pursuant to 9 U.S.C. §§ 3 and 4 and Mass. Gen. Laws c. 251, § 2(a) and (d), the defendant, FMR Corp., moves that the Court enter an order staying or dismissing this action and compelling the plaintiffs to proceed to arbitration before the National Association of Securities Dealers, Inc. ("NASD") or the New York Stock Exchange, Inc. ("NYSE").[1]

At issue in this action is Fidelity's alleged mishandling of three brokerage accounts opened by plaintiff Paul Marinucci, one for himself and a custodial account for each of his sons, Michael and Joseph, also plaintiffs in this action. The plaintiffs contend

---

[1] The plaintiffs erroneously named "Fidelity Investment" as a defendant. Fidelity Investment is not a legal entity. Rather, "Fidelity Investments" is a registered servicemark used by a family of companies which are directly or indirectly owned or controlled in whole or in part by FMR Corp. This family of companies is commonly referred to as Fidelity Investments. In this memorandum, FMR and Fidelity Investments will be referred to as "Fidelity."

that in October 1999, Fidelity inappropriately disclosed their account numbers and social security numbers to Valerie Marinucci, who is the mother of Michael and Joseph and at the time was married to Paul Marinucci.

Each of the accounts is subject to a Pre-Dispute Arbitration Agreement, which requires that this dispute be determined by binding arbitration at either the NASD or the NYSE. Fidelity therefore respectfully moves this Court to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and Mass. Gen. Laws c. 251, § 2(a), and to stay or dismiss this matter.

## II.     STATEMENT OF FACTS

A.     Paul Marinucci's Brokerage Account

In July 1990, Paul Marinucci opened a Fidelity Brokerage Account. When he opened the account, Mr. Marinucci agreed to be bound by the terms of the Fidelity Customer Account Agreement. *See* Exhibit A, Affidavit of Katherine Ho, ¶ 5 (hereinafter Ho Aff.). Further, he specifically acknowledged a pre-dispute arbitration clause and agreed to be bound by it as follows:

> **I represent that I have read the terms and conditions governing this account and agree to be bound by such terms and conditions as currently in effect and as may be amended from time to time. This account is governed by a pre-dispute arbitration agreement which is enclosed. I acknowledge receipt of the pre-dispute arbitration agreement.**

*Id.*

The Pre-Dispute Arbitration Agreement, acknowledged and agreed to by Mr. Marinucci, reads:

> **I agree that all controversies that may arise between us concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, whether entered into**

> **before, on, or after the date this account is opened, shall be determined by a panel of independent arbitrators set up by either the New York Stock Exchange, Inc. or National Association of Securities Dealers, as I may designate.**

*See* Exhibit A, Ho Aff., ¶ 6.

The Customer Account Agreement was amended in 2001.[2]  The amended Agreement contained the following arbitration provision:

> **I agree that all controversies that may arise between us (including but not limited to controversies concerning this or any other account maintained with you), whether arising before, on or after the date this account is opened, shall be determined by arbitration in accordance with the rules then prevailing of either the New York Stock Exchange, Inc., or National Association of Securities Dealers, Inc.**

*See* Exhibit A, Ho Aff., ¶ 11.

Mr. Marinucci is bound by this amended Customer Account Agreement.

*Id.*

      B.     Michael and Joseph Marinucci's Ultra Services Account

Paul Marinucci opened custodial accounts at Fidelity for both of his sons in February 1999.  The New Account Application was signed by Paul Marinucci for both accounts and it provides as follows:

> **I agree to be bound by the terms and conditions set forth in the Customer Agreement as currently in effect and as may be amended from time to time.  This account is governed by a predispute arbitration clause, which is found in Section 18 of the Customer Agreement.  I acknowledge receipt of the predispute arbitration clause.**

*See* Exhibit A, Ho Aff., ¶¶ 7-8.

The Pre-Dispute Arbitration Clause in the Customer Account Agreement reads:

---

[2] Mr. Marinucci's account remains open.  The same arbitration language currently applies.  *See* Exhibit A, Ho Aff. ¶ 12

> **I agree that all controversies that may arise between us concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened, shall be determined by a panel of independent arbitrators set up by either the New York Stock Exchange, Inc. or National Association of Securities Dealers, as I may designate. [3]**

*See* Exhibit A, Ho Aff., ¶ 9.

The accounts of Michael and Joseph were not liquidated until January 2003. *See* Exhibit A, Ho Aff., ¶10. They are therefore bound by the language of the amended 2001 Customer Account Agreement. *See* Exhibit A, Ho Aff., ¶ 11.

## ARGUMENT

### A. The Federal Arbitration Act Compels Enforcement of the Arbitration Agreement

The Federal Arbitration Act (the "FAA") declares that agreements to arbitrate "shall be valid, irrevocable, and enforceable" to the same extent as any contract. 9 U.S.C. § 2. To ensure that such agreements are given effect, the FAA directs courts to stay proceedings whenever suit is brought on an issue "referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3; *see also* 9 U.S.C. § 4 (upon a finding that a party to an arbitration agreement has failed, refused or neglected to arbitrate in accordance therewith, a court shall compel the parties to proceed with arbitration). The Supreme Court has unanimously held that "the Act leaves no room for the exercise of discretion" but mandates a stay of all such proceedings and arbitration of disputes. *See* Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).[4]

---

[3] The "I" in the Agreement applies not only to Paul Marinucci, but to Michael and Joseph as well, as paragraph 3 provides: "If this is a joint account, 'I' refers to all account holders."

[4] The FAA applies to this dispute. *See* Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273-275 (1995); Loche v. Dean Witter Reynolds, Inc., 26 Mass. App. 296, 301 (1988). The same result is

Massachusetts courts enforce the FAA.  *See*, e.g., <u>Weston Securities Corp. v. Aykanian</u>, 46 Mass. App. Ct. 72, 75 (1988) ("the FAA created a body of federal substantive law applicable in state and federal courts"); <u>Loche v. Dean Witter Reynolds, Inc.</u>, 26 Mass. App. 296, 301 (1988) (Section 3 [of the FAA]) requires . . . courts to stay judicial proceedings concerning any dispute covered by an arbitration agreement relating to interstate commerce.").  Under Section 4 of the Act, a party aggrieved by another's refusal to arbitrate may move to compel arbitration.  9 U.S.C. § 4.  If the Court finds that the claims the plaintiff asserts are within the scope of the arbitration agreement, it must dismiss or stay the proceedings and order the plaintiff to pursue his or her claims, if at all, through arbitration.

The arbitration clause in the agreements, both at the time the accounts were opened and at the time the Customer Account Agreement was amended in 2001, is broad in scope.[5]  The Court need look no further than the language of the clause to conclude that an order to proceed to arbitration must enter.  *See* <u>Danvers v. Wexler Construction Co., Inc.</u>, 12 Mass. App. Ct. 160, 163 (1981) ("an agreement to arbitrate which is expressed in general terms 'should be construed as broadly as it was intended'") (citation omitted).  In making a determination as to the arbitrability of claims, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

---

also mandated under the Massachusetts Arbitration Act, which requires that claims subject to arbitration must be stayed and compelled to arbitration.  *See* Mass. Gen. Laws c. 251 § 2(a); <u>Drywall Sys. v. ZVI Constr.</u>, 435 Mass. 664, 665 (2002) ("[A]n order to arbitrate . . . should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that covers the asserted dispute.") (citations and internal quotation marks omitted); <u>Loche</u>, 26 Mass. App. Ct. at 302 (noting "strong Commonwealth policy" in favor of arbitration).

[5] The Court should look to the broader language of the amended Customer Account Agreement because when Paul Marinucci signed the account applications for each of the accounts, the plaintiffs agreed to be bound by the Customer Account Agreement as amended from time to time.  *See* <u>Exhibit A</u>, Ho Aff. ¶ 11.  Regardless of which version of the arbitration clause the Court applies, the result is the same—arbitration is required.

whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).  Indeed, arbitration should be compelled unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Municipality of San Juan v. Corporacion Para El Fomento, 415 F.3d 145, 149 (1st Cir. 2005).  A court need only find that "there exists an interpretation of the parties' agreement that covers the dispute at issue" in order to send the dispute to arbitration.  *In re* Chung and President Enterprises Corp., 943 F.2d 225, 230 (2d Cir. 1991).

Plaintiffs cannot seriously contend that their claims are not subject to the arbitration provisions here.[6]  The allegations of the Complaint speak directly to alleged actions concerning the plaintiffs' brokerage accounts—that Fidelity wrongfully disclosed social security numbers and account numbers.  The allegations raise a "controversy" that falls squarely within the meaning of each of the pre-dispute arbitration clauses at issue here.

    **B.**    **Because All Claims Must Be Referred to Arbitration, a Stay is Mandatory and Dismissal Preferable.**

Section 3 of the FAA requires that, where issues brought before a court are arbitrable, the court shall stay the action until such arbitration has been had in accordance with the terms of the arbitration agreement.  9 U.S.C. § 3; Byrd, 470 U.S. at 218.  While a stay is mandatory, a court is not prevented from dismissing a party in the proper circumstances.  Indeed, because all of the claims presented by Plaintiff are subject to arbitration, this Court should dismiss this claim.  *See* Municipality of San Juan, 415 F.3d

---

[6] This is true regardless of whether the Court looks to the arbitration clauses in existence at the time each of the accounts were opened or to the arbitration clause in the 2001 amended Customer Account Agreement.

at 148 (affirming trial court order both compelling arbitration and dismissing complaint); Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 155 n.21 (1st Cir. 1997), *citing* Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Const. Co., 864 F.2d 635, 637-38 (9th Cir. 1988).

"The weight of authority clearly supports dismissal of the case when all of the issues raised in the District Court must be submitted to arbitration." Alford, 975 F.2d at 1164; *see also* Sea-Land Service, 636 F. Supp. at 757.  As stated in Sea-Land:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration.  Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose.  Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.  *See* 9 U.S.C. §§ 9-12.

636 F. Supp. at 757 (emphasis added); *see also* Alford, 975 F.2d at 1164 ("Because all of the claims were subject to arbitration, the district court acted within its discretion when it dismissed this case . . . ."); Sparling, 864 F.2d at 637-38 (finding district court acted within its discretion in dismissing action where arbitration clause broad enough to bar all of plaintiff's claims).

## **CONCLUSION**

WHEREFORE, Fidelity respectfully moves for an order compelling Plaintiffs to pursue any claim against Fidelity at arbitration, and to stay or dismiss the claims against Fidelity in this matter.

Respectfully Submitted,
**FMR CORP.,**
By its attorneys,


/s/ Patrick J. Dolan
Joseph L. Demeo, BBO # 561254
Patrick J. Dolan, BBO # 564250
Stephanie Taverna Siden, BBO # 643373
Demeo & Associates, P.C.
1 Lewis Wharf
Boston, MA 02110
(617) 263-2600


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on July 19, 2007.

/s/ Patrick J. Dolan
Patrick J. Dolan